**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Manuel Martinez; David Cortes; Elkin Casadiego; Victor Manuel Cervera; Roberto Salazar; Hernan Quiroz; Diana Cardenas; Javier Campoverde; and, Wilfredo Ramos Ortiz, | **COMPLAINT** <br><br> **Jury Trial Demanded** |
| *Plaintiffs*, | |
| -against- | |
| Infrastructure Development Specialists, Inc.; Jose Mauricio Ruiz; Liliana Garcia; Boris Gonzalez; and, Martha Gonzalez, | |
| *Defendants.* | |

Plaintiffs, Manuel Martinez ("Manuel"), David Cortes ("David"), Elkin Casadiego ("Elkin"), Victor Manuel Cervera ("Victor"), Roberto Salazar ("Roberto"), Hernan Quiroz ("Hernan"), Diana Cardenas ("Diana"), Javier Campoverde ("Javier"), Wilfredo Ramos Ortiz ("Wilfredo"), (collectively, "Plaintiffs"), by and through their undersigned attorney, Mohammed Gangat, Esq., as and for their Complaint against defendants, Infrastructure Development Specialists, Inc., Jose Mauricio Ruiz, Liliana Garcia, Boris Gonzalez, and Martha Gonzalez, (collectively, "Defendants"), allege upon personal knowledge as to themselves, and upon information and belief as to other matters, as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (i) unpaid agreed-upon wages; (ii) unpaid overtime wages; (iii) liquidated damages; (iv) prejudgment and post judgment interest; and (v) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (i) unpaid agreed-upon wages; (ii) unpaid overtime wages; (iii) compensatory damages of Defendants' failure to pay timely wages; (iv) unpaid spread-of-hour pay for shifts worked over ten hours in a day; (v) statutory penalties arising out of Defendants' failure to provide required wage and hour law notices; (vi) liquidated damages; (vii) prejudgment and post judgment interest; and (viii) attorneys' fees and costs.

3.      Plaintiffs further alleges that, pursuant to New York Common Law, they are entitled to compensatory damages from Defendants for breach of contract and unjust enrichment.

4.      The relevant statutory period for Plaintiffs' federal claims under the FLSA is the three-year period preceding the date of the filing of the complaint, and the statutory period applicable to Plaintiffs' state law claims under the NYLL is the six-year period preceding the date of the filing of the complaint.

## JURISDICTION

5.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

7.      Plaintiffs, at all relevant times, are adults residing in the State of New York.

8.      Defendant, Infrastructure Development Specialists, Inc. ("Corporate Defendant"), is and was, at all relevant times herein, registered to do business in New York State, and is a

Domestic Business Corporation with its service of process address as 875 THIRD AVENUE, 9TH FLOOR, NEW YORK, NEW YORK, 10022, and its principal place of business as 351 HEMPSTEAD TPKE, ELMONT, NEW YORK, 11003.

9.      At all relevant times, the Corporate Defendant operates the business of real estate development.

10.      Upon information and belief, at all times relevant to the allegations in this Complaint, defendant Jose Mauricio Ruiz ("Individual Defendant"), is the manager of Corporate Defendant.

11.      Upon information and belief, at all times relevant to the allegations in this Complaint, defendant Liliana Garcia ("Individual Defendant"), is the Chief Executive Officer of Corporate Defendant.

12.      Upon information and belief, at all times relevant to the allegations in this Complaint, defendant Boris Gonzalez ("Individual Defendant") is the owner of Corporate Defendant.

13.      Upon information and belief, at all times relevant to the allegations in this Complaint, defendant Martha Gonzalez ("Individual Defendant") is the owner of Corporate Defendant and the wife of defendant Boris Gonzalez.

14.      Upon information and belief, Defendants operated an office located at 2200 E Main St, Patchogue, NY 11772.

15.      Upon information and belief, at all times relevant to the allegations in this Complaint, the Corporate Defendant is centrally controlled and/or owned by the Individual Defendants.

16.    Upon information and belief, at all times relevant to the allegations in this Complaint, the Individual Defendants actively participate in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are each an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

17.    Upon information and belief, at all times relevant to the allegations in this Complaint, the Individual Defendants have had control over the terms and conditions of their employees' employment, including Plaintiffs' employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

18.    Upon information and belief, at all times relevant to the allegations in this Complaint, the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) have and had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and had an annual gross volume of sales of not less than $500,000.

19.    At all relevant times, Defendants continuously employed Plaintiffs to work as non-exempt employees.

20.    At all relevant times, the work performed by Plaintiffs was essential to the businesses operated by Defendants.

21.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

*Plaintiff Manuel Martinez's Employment*

22.     In or about May 2020, Manuel started working for Defendants, and his employment with Defendants ended in November 2020.

23.     Throughout his employment, Manuel worked as a carpenter for several real estate projects developed by Defendants. His primary job duties include renovating the apartments, including installing cabinets, fixing the kitchens, installing doors, and painting the apartments.

24.     Throughout his employment, Manuel's work locations include: (1) 200 La Bonne Vie Dr, East Patchogue, NY 11772; (2) 461 West 34th Street At The Corner Of 34th And 10th– Across From, Hudson Yards, New York, NY 10001; and (3) 68 Spring St, New York, NY 10012.

25.     Throughout his employment, Manuel did not clock in or clock out to track hours he worked, since Defendants failed to set up a clock system.

26.     Based on his best recollection, Manuel usually worked five to six days a week. He worked from 7:00 a.m. to 4:00 p.m., from Monday to Friday; and occasionally from 8:00 a.m. to 4:30 p.m. on Saturday. At times, he only worked from Monday to Friday and did not work on Saturdays.  He worked an average of 50.00 hours per week.

27.     From May 2020 to about July 2020, Manuel was paid $22.50 per hour for all hours he worked and never received any overtime premium for hours worked in excess of forty per week.

28.     Starting from August 2020 to November 2020, Manuel was paid $5,500.00 per apartment he renovated. Usually, it took him three weeks to complete renovating an apartment. During this period, he worked an average of 40 hours per week. Occasionally, he was assigned to work partial jobs and he was paid $22.50 per hour for the hours he worked.

29.     Throughout his employment, he was paid weekly.

30.     Before the end of his employment, Manuel was not paid for the last two apartments he renovated, about $11,000.00, and then he quit his employment.

31.     On occasion, Manuel worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

*Plaintiff David Cortes' Employment*

32.     On or about August 7, 2020, David started working for Defendants, and his employment with Defendants ended on January 4, 2021.

33.     Throughout his employment, David worked as an assistant and a helper doing manual labor work for several real estate projects developed by Defendants in New York.

34.     Throughout his employment, David did not clock in or clock out to track hours he worked, since Defendants failed to set up a clock system.

35.     Based on his best recollection, David's work schedules changed every week and he worked an average of 40.00 hours per week, usually from 8:00 a.m. to 4:00 p.m., from Monday to Friday, with occasional Saturdays worked bringing his total to 45-48 hours.

36.     Throughout his employment, David was paid $17.50 per hour or $140.00 per day by check. The checks were signed by defendant Martha Gonzalez. Throughout his employment, he was paid weekly.

37.     For the last 5 or 6 weeks of his employment, David did not receive any compensation for his work. During this period, he worked between 40 and 46 hours per week, usually from 8:00 a.m. to 4:00 p.m., from Monday to Friday. Occasionally, he worked on Saturday.

38.     David quit his employment on January 4, 2021.

39.     On occasion, David worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

***Plaintiff Elkin Casadiego's Employment***

40.     On December 14, 2020, Elkin started working for Defendants, and his employment with Defendants ended in the first week of January 2021.

41.     Throughout his employment, Elkin worked as a cleaner and an electrician helper doing manual labor work for several residence development projects developed by Defendants in Long Island, New York.

42.     At all relevant times, defendant Jose Mauricio Ruiz supervised Elkin's work performance.

43.     Throughout his employment, Elkin would record the hours he worked and reported to a secretary employed by Defendants each workday. However, Elkin is not in possession of any work hour records.

44.     During his employment, Elkin saw defendant Boris Gonzalez on the worksites.

45.     Based on his best recollection, Elkin's work schedules changed every week and he worked an average of 45.00 hours a week, usually from 8:00 a.m. to 5:00 p.m., from Monday to Friday. Occasionally, he worked on Saturday.

46.     Throughout his employment, Elkin was told that he would be paid $15.00 per hour for all hours he worked and would be paid by check.

47.     However, Elkin only received one paycheck in the amount of around $630.00 for one workweek. For the remainder of his workweeks, he never received any compensation. Defendant Jose Mauricio Ruiz handed him this paycheck.

48.     In the first week of January 2021, Elkin quit his employment because he only received one paycheck for one workweek throughout his employment.

49.     On occasion, Elkin worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

***Plaintiff Victor Manuel Cervera's Employment***

50.     In or around March 2019, Victor was hired by defendant Jose Mauricio Ruiz to work for Defendants. His employment ended in or about November 2019.

51.     Throughout his employment, Victor worked as a carpenter doing manual labor work for several real estate projects developed by Defendants in Long Island, NY; Brooklyn, NY; and Philadelphia, PA. His primary job duties include renovating the apartments, including installing cabinets, fixing the kitchens, installing doors, and painting the apartments.

52.     During his employment, Victor and other labor workers would meet at the work sites if the work sites are located in Long Island, NY; or Brooklyn, NY. If the work sites are located in Philadelphia, PA, Victor and other labor workers would meet in a site near Hempstead Town, NY and from there all go to Philadelphia, PA.

53.     During his employment, Victor needed to buy work equipment and work materials out of his own pocket to perform work for Defendants.

54.     Throughout his employment, Victor did not clock in or clock out to track hours he worked, since Defendants failed to set up a clock system.

55.     Based on his best recollection, Victor's work schedules changed every week and he worked between 48 and 50 hours a week, usually from 8:00 a.m. to 5:00 p.m., from Monday to Friday. Occasionally, he worked on Saturday.

56.     Throughout his employment, Victor was paid $250.00 per day and if he worked more than forty hours per workweek, he would be paid $25.00 per hour for the hours more than forty per workweek.

57.     During his employment, defendant Jose Mauricio Ruiz or defendant Boris Gonzalez would hand him the paychecks.

58.     For the last one month of his employment, Victor did not receive any compensation for his work.

59.     Victor complained to defendant Jose Mauricio Ruiz about not being paid, and he was told to go to the Corporate Defendant's office located at 2200 E Main St, Patchogue, NY 11772 to complain. Although Victor went to the office and made complaints about not being paid for one month, his complaints were never addressed.

60.     In or about November 2019, Victor quit his employment.

61.     On occasion, Victor worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

***Plaintiff Roberto Salazar's Employment***

62.     In or around October 2019, Roberto was hired by defendant Jose Mauricio Ruiz to work for Defendants. His employment ended in or about December 2019.

63.     Throughout his employment, Roberto worked as a painter doing manual labor work for several real estate projects developed by Defendants in Queens, NY. His primary job duties consisted of painting apartment walls, kitchens, bathrooms, and others.

64.     During his employment, defendant Jose Mauricio Ruiz would pick him up at 200 La Bonne Vie Dr, East Patchogue, NY 11772.

65.     Based on his best recollection, Roberto has no fixed work schedule and he worked an average of 40.00 hours a week, from Monday to Friday.

66.     Throughout his employment, Roberto was told that he would be paid $800.00 per apartment painted.

67.     During his employment, Roberto painted at least 6 apartments.

68.     During the employment, Roberto only received one paycheck of $2,200.00, and has otherwise not received any other compensation for this employment.

69.     On occasion, Roberto worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

*Plaintiff Hernan Quiroz's Employment*

70.     In or around October 2019, Hernan was hired by both defendant Jose Mauricio Ruiz and defendant Boris Gonzalez to work for Defendants, and stopped working for Defendants in December 2019. Then from April 2020 to June 2021, Hernan returned to work for Defendants.

71.     Throughout his employment, Hernan worked as a painter doing manual labor work for several real estate projects developed by Defendants in Long Island, NY; and Manhattan, NY.

72.     Based on his best recollection, at all relevant times, Hernan worked an average of 44.00 hours per week, usually from 7:30 a.m. to between 4:00 p.m. and 4:30 p.m., from Monday to Friday. Occasionally, he worked on Saturday.

73.     From October 2019 to December 2019, Hernan was paid $180.00 per day and never received any overtime premium for hours worked more than forty per week.

74.     From April 2020 to June 2021, Hernan was paid $800.00 per apartment he renovated. He usually completed renovating two apartments per week. However, Defendants failed to compensate him for all work he did. Based on Hernan's calculation, Defendants owed him about $10,000.00.

75.     On occasion, Hernan worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

**_Plaintiff Diana Cardenas' Employment_**

76.     In or about October 2020, Diana was hired by defendant Jose Mauricio Ruiz to work for Defendants, and her employment ended in November 2020. Diana worked approximately 6 weeks.

77.     Throughout her employment, Diana worked as a cleaner doing manual labor work for Defendants at 200 La Bonne Vie Dr, East Patchogue, NY 11772.

78.     Throughout her employment, Diana did not clock in or clock out to track hours she worked, since Defendants failed to set up a clock system.

79.     Based on her best recollection, Diana's work schedules changed every week and she worked an average of between 40 to 48 hours per week, usually from between 8:00 a.m. and 8:30 a.m. to between 4:30 p.m. and 5:00 p.m., from Monday to Friday. Occasionally, she worked on Saturday.

80.     At the beginning of her employment, Diana was told that she would be paid $17.00 per hour for all hours she worked.

81.     However, Diana only received one payment of about $800.00 in cash during her employment, and has otherwise not received any other compensation for this employment.

82.     In November 2020, Diana quit her employment.

83. On occasion, Diana worked a shift in excess of 10 hours per day entitling her to spread-of-hour pay under the NYLL.

***Plaintiff Wilfredo Ramos Ortiz's Employment***

84. On or about June 20, 2020, Wilfredo was hired by defendant Jose Mauricio Ruiz to work for Defendants, and his employment with Defendants ended in November 2020.

85. Throughout his employment, Wilfredo worked as a carpenter doing manual labor work for several real estate projects developed by Defendants at 200 La Bonne Vie Dr, East Patchogue, NY 11772.

86. From about June 2020 to about July 2020, Wilfredo worked an average of 51 hours per week, usually from 8:00 a.m. to 4:30 p.m., from Monday to Saturday. Occasionally, he worked late past 4:30 p.m.

87. From about June 2020 to about July 2020, Wilfredo was paid $180.00 per day, or $22.50 per hour. If he worked more than forty hours per week, he would be paid $22.50 per hour for the hours worked in excess of forty per week.

88. From about June 2020 to about July 2020, he was paid biweekly.

89. Throughout his employment, Wilfredo was paid by check that was signed by defendant Martha Gonzalez, the wife of defendant Boris Gonzalez.

90. On occasion, Wilfredo worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

***Plaintiff Javier Campoverde's Employment***

91. On January 1, 2021, Javier was hired by both defendant Jose Mauricio Ruiz and defendant Boris Gonzalez to work for Defendants and his employment ended on February 24, 2021.

92.     From January 1, 2021, to January 8, 2021, Javier worked as a painter doing manual labor work for a real estate project developed by Defendants at 200 La Bonne Vie Dr, East Patchogue, NY 11772. During this period, defendant Jose Mauricio Ruiz supervised Javier's work schedules and work performance.

93.     From January 1, 2021, to January 8, 2021, Javier did not clock in or clock out to track hours he worked, since Defendants failed to set up a clock system.

94.     Based on his best recollection, Javier's work schedules changed every week and he worked an average of 50.00 hours a week, usually from between 7:00 a.m. and 7:30 a.m. to 5:30 p.m, from Monday to Friday. Occasionally, he worked on Saturday.

95.     From January 1, 2021, to January 8, 2021, Javier was paid $25.00 per hour for all hours worked and never received any overtime premium.

96.     During my employment, Javier was paid biweekly.

97.     On occasion, Javier worked a shift in excess of 10 hours per day entitling him to spread-of-hour pay under the NYLL.

*Wage Notice and Wage Statements*

98.     At all relevant times, Plaintiffs did not receive any wage statements. Nor were Plaintiffs provided with any wage notices.

99.     Defendants did not furnish Plaintiffs with an accurate statement with every payment of wages, listing gross wages, deductions and net wages as required by NYLL § 195.

100.    Defendants failed to display, in a place accessible to employees and in a visually conspicuous manner, the notices of employee rights to receive the minimum wage and overtime pay at a rate of one and one-half times their regular rate as required under the New York Labor Law.

## STATEMENT OF CLAIM

### COUNT I: FLSA - UNPAID MINIMUM WAGE AND UNPAID OVERTIME

101.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

102.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

103.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

104.    Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

105.    At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

106.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

107.    Plaintiffs were entitled to be paid at the agreed-upon pay rates according to the FLSA and at a minimum, the minimum wage for all hours worked.

108.    Defendants failed to pay Plaintiffs agreed-upon rates for their work or minimum wage for all hours worked.

109.    Plaintiffs are entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

110.    Defendants failed to pay Plaintiffs overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

111.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

112.    Defendants have a policy that they knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiffs. Instead, Defendants paid Plaintiffs nothing for those overtime hours.

113.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

114.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b).

115.    Due to reckless, willful and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, and an equal amount as liquidated damages, and prejudgment interest thereon.

116.    Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II: NYLL - UNPAID MINIMUM WAGE, UNPAID OVERTIME, AND UNPAID SPREAD-OF-HOUR PAY

117.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

118.    Defendants employed Plaintiffs within the meaning of NYLL §§ 2 and 651.

119.    Plaintiffs were entitled to be paid at the agreed-upon pay rates according to the NYLL.

120.    Defendants failed to pay Plaintiffs agreed-upon rates for their work. Instead, Defendants failed to compensate Plaintiffs any wages for certain workweeks.

121.    Defendants failed to pay the minimum wage for all hours worked.

122.    Plaintiffs are entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the NYLL.

123.    Defendants knowingly and willfully violated Plaintiff's rights by failing to pay "spread-of-hour" premium pay to Plaintiff for each shift he worked in excess of ten (10) hours in accordance with 12 N.Y.C.R.R. § 146-1.6.

124.    Defendants knowingly and willfully violated the rights of Plaintiffs by failing to pay them the required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

125.    Plaintiffs were entitled to spread-of-hour pay for all work shift in excess of 10 hours per day.

126.    Defendants' violations of the NYLL, as described, were willful and intentional.

127.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the NYLL.

128.    As a direct and proximate result of Defendants' violation of the NYLL, Plaintiffs are entitled to liquidated damages pursuant to the NYLL § 663(1).

129.    Due to reckless, willful, and unlawful conducts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages, unpaid

spread of hours wages; and an equal amount as liquidated damages, and prejudgment interests thereon.

130.     Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to NYLL § 198.

**COUNT III: NYLL - ANNUAL WAGE NOTICE AND
PERIODIC WAGE STATEMENTS**

131.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

132.     Defendants have willfully failed to supply Plaintiffs with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

133.     Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

134.     Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

135.    Through their knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

136.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

137.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## COUNT IV: NYLL - FAILURE TO PAY TIMELY WAGES

138.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

139.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs.

140.    Plaintiffs, as manual labor workers, are entitled to receive wages weekly.

141.    Defendants failed to pay Plaintiffs on a weekly basis as required by NYLL § 191(1)(a).

142.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## COUNT V: BREACH OF CONTRACT

143.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

144.     Defendants failed to pay Plaintiffs rates for work performed which constitutes a breach of contract.

145.     As a result of Defendants' breach of the contract Defendants are liable to Plaintiffs for compensatory damages arising from the breach.

## COUNT VI: UNJUST ENRICHMENT

146.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

147.     Plaintiffs provided labor services to further construction contracts under which Defendants were paid.

148.     It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' efforts, without compensating Plaintiffs.

149.     Plaintiffs are entitled to relief for Defendants' unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

'

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Manuel Martinez; David Cortes; Elkin Casadiego; Victor Manuel Cervera; Roberto Salazar; Hernan Quiroz; Diana Cardenas; Javier Campoverde; and, Wilfredo Ramos Ortiz, respectfully request that this Court grant the following relief:

1.   An award of unpaid wages due under the FLSA and NYLL;

2.   An award of unpaid wages due under the FLSA and NYLL;

3.   An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 216(b) and NYLL § 663(1);

4.   An award of compensatory damages due to Defendants' failure to pay Plaintiffs timely wages pursuant to NYLL § 191;

5.   Compensatory damages in an amount to be determined at trial for breach of contract and/or unjust enrichment claims;

6.   Statutory damages pursuant to NYLL § 198(1)(b) and (d);

7.   An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

8.   An award of prejudgment and post-judgment interest;

9.   An award of costs and expenses associated with this action, together with reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b) and NYLL § 198; and

10.  Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
     August 2, 2022

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____

Mohammed Gangat, Esq.
675 3rd Avenue, Suite 1810
New York, NY 10017
(718) 669-0714
mgangat@gangatllc.com
*Attorneys for Plaintiffs*